1  **Matthew S. Parmet** (CSB # 296742)
   matt@parmet.law
2  **PARMET PC**
   340 S. Lemon Ave., #1228
3  Walnut, CA 91789
4  phone  713 999 5228

5  **Michael A. Josephson** (Texas Bar No. 24014780)
   mjosephson@mybackwages.com
6  **Carl A. Fitz** (Texas Bar No. 24105863)
   cfitz@mybackwages.com
7  **Melodie K. Arian** (California Bar No. 302358)
   marian@mybackwages.com
8  **JOSEPHSON DUNLAP, LLP**
9  11 Greenway Plaza, Suite 3050
   Houston, Texas 77046
10 713-352-1100 – Telephone
   713-352-3300 – Facsimile
11

12 **Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# EUREKA DIVISION

| | |
|---|---|
| JOHN HURLOCKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APTIM SERVICES, LLC,<br><br>Defendant. | Case No. 1:21-cv-00403<br><br>**Plaintiff's Original Complaint for Damages**<br><br>1. **Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. § 201,** *et seq.***)**<br>2. **Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders)**<br>3. **Failure to provide compensation for missed meal and rest periods (CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders)**<br>4. **Violations of record keeping requirements (CAL. LAB. CODE § 226)**<br>5. **Waiting time penalties (CAL. LAB. CODE § 203)**<br>6. **Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200,** *et seq.***)** |

7. Civil penalties under the Private Attorneys General Act of 2004 (Cal. Lab. Code §§ 2698, *et seq.*)

## SUMMARY

1. Plaintiff John Hurlocker worked for Defendant APTIM Services, LLC (APTIM) as a Deputy Waste Manager and was charged with monitoring the transportation of hazardous waste from nuclear power plants for APTIM's customers.

2. The nature of Hurlocker's working relationship with APTIM is that of an employer-employee, and he is entitled to the benefits of an employee under the FLSA and California law.

3. Hurlocker worked overtime while working for APTIM.

4. APTIM paid Hurlocker the same hourly rate for all hours worked including those in excess of 40 in a workweek.

5. APTIM did not pay Hurlocker a salary.

6. APTIM did not guarantee Hurlocker a salary.

7. Hurlocker and the other hourly employees are similarly situated for the purposes of the FLSA and California law.

8. Hurlocker seeks back wages, liquidated damages, attorney fees, costs, and all other remedies available under the FLSA and California law.

## JURISDICTION & VENUE

9. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves a federal question under the FLSA, 29 U.S.C. § 216(b).

10. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

11. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because Hurlocker worked for APTIM in this District and Division.

## INTRADISTICT ASSIGNMENT

12. A substantial part of the events or omissions giving rise to the claim occurred in Humboldt County, California.

13. This matter is therefore properly assigned to the District's Eureka Division. Civ. L. R. 3-2(d).

**THE PARTIES**

14. Hurlocker worked for APTIM as a Waste Manager.

15. Hurlocker worked for APTIM from approximately May 2014 until September 2019.

16. Throughout his employment with APTIM, Hurlocker was paid the same hourly rate for all hours worked including those in excess of 40 in a workweek.

17. Hurlocker's consent is attached as Exhibit A.

18. Hurlocker brings this action on behalf of himself and all other similarly situated workers were paid by APTIM's straight time for overtime system, regardless of job title.

19. APTIM did not pay these workers overtime for all hours that they worked in excess of 40 hours in a workweek, as required by the FLSA.

20. Hurlocker represents at least two classes of similarly situated co-workers.

21. First, Hurlocker represents a class of similarly situated hourly employees under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA Class is defined as:

> **All APTIM employees who were paid straight time for overtime in the past three years.**

22. Second, Hurlocker represents a class of similarly situated hourly employees under the California Labor Code pursuant to Federal Rule of Civil Procedure 23. The California Class is defined as:

> **All APTIM employees working in California who were paid straight time for overtime in the past four years.**

23. Collectively, the FLSA Class Members and California Class Members are referred to as the "Putative Class Members."

24. APTIM is a Louisiana corporation with its headquarters and principal place of business in Louisiana.

25. APTIM conducts business in a systematic and continuous manner throughout California, including this District and Division.

26. APTIM may be served by serving its registered agent for service of process: **CT Corporation, 818 West Seventh St., Ste. 930, Los Angeles, CA 90017**.

## COVERAGE UNDER THE FLSA

27. For at least the past three years, APTIM has been an employer within the meaning of the section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28. For at least the past three years, APTIM has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

29. For at least the past three years, APTIM has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as construction equipment, laptops, and cell phones – that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

30. For at least the past three years, Hurlocker and the FLSA Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

31. APTIM is a full-service provider of power plant services.

32. To provides its services, APTIM staffs employees throughout the United States.

33. Hurlocker was one of these employees.

34. Hurlocker worked for APTIM from May 2014 until September 2019.

35. Hurlocker performed work for APTIM in Humboldt County, California.

36. APTIM paid Hurlocker by the hour.

37. Hurlocker was paid $75 for each approved hour he worked.

38. Hurlocker reported the hours he worked to APTIM on a regular basis.

39. Hurlocker was not guaranteed a salary.

40. If Hurlocker worked fewer than 40 hours, he was only paid for the hours he worked.

41. Hurlocker regularly worked over 40 hours.

42. Hurlocker was paid his regular rate of $75 for every hour he worked.

43. Rather than receiving time and half as required by the FLSA, Hurlocker only received "straight time" pay for overtime hours worked.

44. APTIM's "straight time for overtime" payment scheme violates the FLSA.

45. APTIM was and is aware of the overtime requirements of the FLSA.

46. APTIM nonetheless fails to pay certain employees, such as Hurlocker, overtime.

47. APTIM's failure to pay overtime to these workers was, and is, a willful violation of the FLSA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

48. APTIM's illegal "straight time for overtime" policy extends well beyond Isaacs.

49. It is the "straight time for overtime" payment plan that is the "common policy or plan that violate[s] the law." (*McDonald v. Ricardo's on the Beach, Inc.*, No. CV 11-93366 PSG (MRWx), 2013 WL 228334, at *2 (C.D. Cal. Jan. 22, 2013) [internal quotations omitted].)

50. Numerous hourly employees have been victimized by this pattern, practice, and policy, which are in willful violation of the FLSA.

51. Many of these hourly employees have worked with Hurlocker and have reported that they were paid in the same manner and were not properly compensated for all hours worked, as required by the FLSA.

52. Thus, from Hurlocker's observations and discussions with these hourly employees, he is aware that the illegal practices or policies of APTIM have been imposed on a distinct group of hourly employees.

53. These employees were all paid straight time for overtime, and were not paid overtime compensation.

54. These hourly employees are victims of APTIM's unlawful compensation practices and are similarly situated to Hurlocker in terms of pay provisions and employment practices.

55. APTIM's failure to pay wages and overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies and practices, which are not dependent on the personal circumstances of the hourly employees.

56. Thus, Hurlocker's experiences are typical of the experiences of the hourly employees he seeks to represent.

57. The specific job titles or precise job locations of the various hourly employees does not prevent collective treatment.

58. Hurlocker has no interests contrary to, or in conflict with, the members of the FLSA Class Members and California Class Members. Like each member of the proposed classes, Hurlocker has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

59. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

60. Absent this action, many FLSA and California Class Members likely will not obtain redress of their injuries and APTIM will reap the unjust benefits of violating the FLSA and California law.

61. Furthermore, even if some of the FLSA and California Class Members could afford individual litigation against APTIM, it would be unduly burdensome to the judicial system.

62. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

63. The questions of law and fact common to each of the FLSA and California Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a. Whether APTIM employed the FLSA and California Class Members within the meaning of the FLSA and California law;

    b. Whether the FLSA and California Class Members were exempt from overtime;

    c. Whether APTIM's decision to not pay overtime to the FLSA Class Members was made in good faith; and

    d. Whether APTIM's violation of the FLSA was willful.

64. Hurlocker's claims are typical of the FLSA and California Class Members. Hurlocker and the FLSA and California Class Members have sustained damages arising out of APTIM's illegal and uniform employment policy.

65. Hurlocker knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

66. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

67. All the Putative Class Members, regardless of their precise job requirements or rates of pay, are entitled to be properly compensated for all hours worked in excess of 40 hours per week. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

**FIRST CAUSE OF ACTION—VIOLATION OF THE FLSA**

68. Hurlocker incorporates by reference all other paragraphs.

69. APTIM has violated, and is violating, section 7 of the FLSA, 29 U.S.C. § 207, by compensating hourly employees straight time for overtime in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating the FLSA Class Members for their employment in excess of 40 hours per week at rates no less than 1.5 times the regular rates for which they were employed.

70. APTIM knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Class Members overtime compensation.

71. APTIM's failure to pay overtime compensation to these FLSA Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

72. Accordingly, Hurlocker and the FLSA Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

**SECOND CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW**

73. Hurlocker incorporates by reference all other paragraphs.

74. The California Labor Code requires that all employees, including Hurlocker and the California Class, receive 1.5 times their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

75. Despite working over 8 hours a day as part of their normal and regular shift, Hurlocker and the California Class did not receive any overtime compensation for all hours worked over eight in one day.

76. The California Labor Code also requires that all employees, including Hurlocker and the California Class, receive two times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

77. Although Hurlocker and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

78. The California Labor Code requires that all employees, including Hurlocker and the California Class, receive two times the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders #1-2001 through #17-2001.

79. Although Hurlocker and the California Class regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

80. This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Hurlocker and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### THIRD CAUSE OF ACTION—FAILURE TO PROVIDE COMPENSATION FOR MISSED MEAL AND REST PERIODS

81. Hurlocker incorporates by reference all other paragraphs.

82. In accordance with the mandates of California Labor Code sections 226.7 and 512, and applicable IWC Wage Orders, Hurlocker and the California Class had the right to take two

uninterrupted 30-minute meal periods for each day they worked 10 hours per day and a 10 minute rest period for every four hours worked per day. CAL. LAB. CODE §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001.

83. Although the California Labor Code requires that all employees, including Hurlocker and the California Class, receive two, 30-minute meal-period breaks when employed for 10 hours per day, Hurlocker and the California Class did not receive two meal-period breaks for each day worked, despite working shifts of 12 hours or more. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

84. As a pattern and practice, APTIM did not provide Hurlocker and the California Class with meal-period breaks, and did not provide proper compensation for this failure as required by California law.

85. Although the California Labor Code requires that all employees, including Plaintiff and the California Class, receive a 10-minute rest period for every four hours worked, Hurlocker and the California Class did not receive any rest periods during their shifts of 12 or more hours. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

86. As a pattern and practice, APTIM did not provide Hurlocker and the California Class with rest-period breaks, and did not provide proper compensation for this failure as required by California law.

87. Hurlocker and the California Class are entitled to receive compensation, at their regular rate of pay, of one hour for each day they were denied their lawfully required meal- and rest-periods. CAL. LAB. CODE § 512; IWC Wage Orders #1-2001 through #17-2001.

88. APTIM's policy failed to provide Hurlocker and the California Class with the legally mandated meal period breaks. Such a pattern, practice, and uniform administration of corporate policy as described herein is unlawful and creates an entitled to recovery by Hurlocker and the California Class in a civil action, for the balance of the unpaid compensation pursuant to Labor Code sections 226.7 and 512, and applicable IWC Wage Orders.

**FOURTH CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS**

89. Hurlocker incorporates by reference all other paragraphs.

90. California Labor Code section 226 requires APTIM to keep accurate records regarding the rates of pay for their California employees and provide that information to Hurlocker and the California Class with their wage payment.

91. Because APTIM failed to pay Hurlocker and the Putative Class Members lawful wages, it did not maintain accurate records of Hurlocker and the California Class' daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Hurlocker and the California Class with their wages.

92. This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Hurlocker and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

### FIFTH CAUSE OF ACTION—WAITING TIME PENALTIES

93. Hurlocker incorporates by reference all other paragraphs.

94. At all relevant times, APTIM was required to pay Hurlocker and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

95. As a result of APTIM's alleged California Labor Code violations, APTIM regularly failed to pay Hurlocker and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly APTIM owes waiting time penalties pursuant to California Labor Code section 203.

96. The conduct of APTIM, in violation of Hurlocker and the California Class' rights, was willful and was undertaken by the agents, employees, and managers of APTIM.

97. APTIM's willful failure to provide Hurlocker and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

98. Therefore, Hurlocker and the California Class who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

### SIXTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW

99. Hurlocker incorporates by reference all other paragraphs.

100. APTIM has engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) meal- and rest-period break wages; (4) accurate wage statements; and (5) waiting time penalties.

101. As a result of APTIM's failure to comply with federal and state law, APTIM has also violated the California Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

102. The relevant acts by APTIM occurred within the four years preceding the filing of this action.

103. On information and belief, APTIM has engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Hurlocker and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

104. Hurlocker and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

105. Hurlocker and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting APTIM from engaging in the violations and other misconduct referred to above.

106. APTIM is also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

**SEVENTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA**

107. Hurlocker incorporates all other allegations.

108. Hurlocker and the California Class are aggrieved employees within the meaning of California Labor Code section 2699.

*109.* As aggrieved employees, Hurlocker and the California Class seek to recover of civil penalties against APTIM pursuant to the Private Attorneys General Act of 2004 (PAGA), Cal. Lab. Code §§ 2698, *et seq.*

110. APTIM has knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

    a. Failing to pay wages (Cal. Lab. Code §§ 510, 1194, 1194.5; IWC Wage Orders #1-2001 through #17-2001);

    b. Failing to provide compensation for missed meal and rest periods (Cal. Lab. Code §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001);

    c. Violating record keeping requirements (Cal. Lab. Code § 226);

    d. Unlawfully collecting, receiving, or withholding wages (Cal. Lab. Code §§ 221, 225.5);

    e. Failing to pay wages promptly following termination of employment, or when due and payable (Cal. Lab. Code § 203).

111. The civil penalties sought by Hurlocker and the California Class include the recover of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

112. Hurlocker and the California Class seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Hurlocker and the California Class pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

113. Hurlocker and the California Class will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

114. Hurlocker provided notice to APTIM of its California Labor Code and IWC Wage Orders violations on January 8, 2021.

115. On the same date, Hurlocker submitted notice to the California Labor and Workplace Development Agency (LWDA) as required by PAGA.

116. Hurlocker's notice to APTIM and the LWDA advises each of them of his intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA

declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

117. If the LWDA declines to investigate or prosecute, Hurlocker and the California Class will pursue their PAGA claims in the course of this action.

118. Hurlocker and the California Class had to retain counsel to file this action to protect their interests and to assess and collect the civil penalties owed by APTIM.

119. Hurlocker and the California Class have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA

**RELIEF SOUGHT**

120. Hurlocker prays for judgment against APTIM as follows:

    a. For an order certifying a class action under Rule 23 for the purposes of the claims under California law;

    b. For an order certifying this case as a collective action for the purposes of the FLSA claims;

    c. For an order finding APTIM liable for violations of state and federal wage laws with respect to Hurlocker and all Class Members covered by this case;

    d. For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Hurlocker and all Class Members covered by this case;

    e. For a judgment awarding Hurlocker and all Class Members covered by this case their costs of this action;

    f. For a judgment awarding Hurlocker and all Class Members covered by this case their attorneys' fees;

    g. For a judgment awarding Hurlocker and all Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

    h. For all such other and further relief as may be necessary and appropriate.

Date: January 15, 2021

Respectfully submitted,

**PARMET PC**

By: _/s/ Matthew S. Parmet_
      **Matthew S. Parmet**

**Attorneys for Plaintiff**